IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**RASHAD GRIEGO,**

       **Plaintiff,**

vs.                                                Civ. No. 11-561 ACT

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

       **Defendant.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Motion to Reverse and Remand for a Rehearing, With Supporting Memorandum ("Motion") of the Plaintiff Rashad Griego ("Plaintiff"), filed January 24, 2012 [Doc. 21]. The Commissioner of Social Security ("Defendant") filed a Response on March 23, 2012 [Doc. 22], and Plaintiff filed a Reply on April 5, 2012 [Doc. 23]. Having considered the Motion, the memoranda submitted by the parties, the administrative record and the applicable law, the Court finds that the Motion is well-taken and will be GRANTED.

## I.  PROCEDURAL RECORD

On January 17, 2008, Plaintiff protectively filed applications for Social Security Child Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433 and Supplemental Security Income ("SSI") under Title XVI, 42 U.S.C. §§1381-1383f. [Tr. 98, 104.] In order to be entitled to child's insurance benefits, the Plaintiff must have a disability that began before attainment of age 22. [Tr. 10.]  Plaintiff alleges a disability beginning January 2, 2008, due to seizures and ADHD.  [Motion at 1, Tr. 118.]  His applications

were initially denied on May 19, 2008, and denied again at the reconsideration level on October 8, 2008. [Tr. 57, 60, 67.]

The ALJ conducted a hearing on September 1, 2009. [Tr. 18-52.] At the hearing, Plaintiff was represented by Attorney Feliz M. Martone. On November 23, 2009, the ALJ issued an unfavorable decision. In his report, the ALJ found that Plaintiff had severe impairments of seizure disorder and attention deficit hyperactivity disorder. [Tr. 12.] The ALJ concluded that the Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. [Tr. 12-13.] The ALJ determined that Plaintiff has the residual functional capacity to perform a full range of unskilled work at all exertional levels, but with nonexertional limitations necessitating the employment of standard seizure precautions as defined in CFR 404.1567(a). [Tr. 13.] In considering the claimant's age, education, work experience, and residual functional capacity, the ALJ determined "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform[.]" [Tr. 16.]

On May 6, 2011, the Appeals Council issued its decision denying Plaintiff's request for review and upholding the final decision of the ALJ. [Tr. 1.] On June 24, 2011, the Plaintiff filed his Complaint for judicial review of the ALJ's decision. [Doc. No. 1.]

Plaintiff was born on February 29, 1988. [Tr. 98, 104.] The Plaintiff completed the eleventh grade and has past work experience in construction as a framer. [Tr. 119, 123.] The claimant did not engage in substantial gainful activity since January 2, 2008, the alleged onset date. [Tr. 12.]

## II.  STANDARD OF REVIEW

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment."  42 U.S.C. § 423(d)(1)(A).  A claimant is disabled under the Act if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy."  42 U.S.C. § 423(d)(2)(A).  In order to qualify for disability insurance benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months, which prevents the claimant from engaging in substantial gainful activity.  42 U.S.C. §423(d)(1)(A); *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993).   Social Security regulations implement a five-step sequential process to evaluate a disability claim.  20 C.F.R. § 404.1520.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) to two inquiries: first, whether the decision was supported by substantial evidence; and second, whether the correct legal standards were applied.  *Hamlin v. Barnhart*, 365 F.3d 1208,

---

[1]  Step One requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. § 404.1510.  Step Two requires that the claimant establish that she has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities.  *See* 20 C.F.R. § 404.1520(C).  If the claimant is engaged in substantial gainful activity (Step One) or if the claimant's impairment is not medically severe (Step Two), disability benefits are denied.  At Step Three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Listings").  A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry.  If not, the evaluation proceeds to Step Four, where the claimant must establish that she does not retain the residual functional capacity ("RFC") to perform her past relevant work.  If the claimant's Step Four burden is met, the burden shifts to the Commissioner to establish at Step Five that work exists in significant numbers in the national economy which the claimant, taking into account her age, education, work experience, and RFC, can perform.  *See Dikeman v. Halter*, 245 F.3d 1182, 1183 (10th Cir. 2001).  Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work.  20 C.F.R. § 404.1520.

1214 (10th Cir. 2004) (quotation omitted).  Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion.  *Id.*  The court's review is based on the record taken as a whole, and the court will "meticulously examine the record in order to determine if the evidence supporting the agency's decision is substantial, taking 'into account whatever in the record fairly detracts from its weight.'" *Id*., *quoting Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).  The court "may neither reweigh the evidence nor substitute" its opinion for that of the Commissioner.  *Hamlin*, 365 F.3d at 1214 (quotation omitted).

### III.  MEDICAL HISTORY

Plaintiff was 19 years old at the time he applied for DIB and SSI. [Tr. 98, 104.]  In applying for benefits, Plaintiff stated he became disabled on January 2, 2008, due to "seizures and ADHD" and that:

> I can't drive since I have seizures.  I have a hard time paying attention sometimes.  If the instructions are written down then I can follow them, but if someone says something to me I will forget.  I have to watch people in order to learn a job.  I get frustrated because I have a hard time understanding sometimes.  When I'm stressed out I sometimes get headaches.  And after my seizures I'm out of it for a few days.  The seizures I get are always gran mal.  And I get them without warning.

[Tr. 118.]  Plaintiff indicated that he tried to work in 2006 and stopped working because of "transportation problems and personality problems with the boss."  [Id.]  At the time of his applications, Plaintiff was living with his grandmother, Rosemary Saiz, in Veguita, New Mexico.

#### A. School Records

Plaintiff was first evaluated with special education needs in 1998 (4th Grade). [Tr. 180.]  He was found at that time to meet the criteria for the "exceptionality specific learning disabled"

and was placed in a special education program with ancillary speech language services. [Id.] "It was noted that he had been diagnosed by a psychologist as having ADHD and depression." [Id.]

Plaintiff was reevaluated in 2003 at which time "his standard scores in cognitive abilities, reading, written language, and math were all very consistent with previous testing. His Freedom from Distractibility index core on the WISC-III was significantly low." [Tr. 180.]

The Belen Public Schools reevaluated his special education needs in 2006 (11th Grade) and reported that Plaintiff continued to "demonstrate the characteristics of a student with a specific learning disability[.]" His reading and math skills were below average (roughly at sixth grade level), and his written language skills were low (roughly at fourth grade level). [Tr. 182-83.] Teacher reports indicated that Plaintiff "works best when instructions are given in one-step, specific, increments," "his attention span is very short," and "[h]e is easily distracted." [Tr. 187, 188, 191.]

The Plaintiff completed the eleventh grade and has been unsuccessful in taking the GED exam. [Tr. 25, 36, 119.]

B.   Dr. Richard Madden - ADHD

Plaintiff's medical records reveal that he began receiving treatment for ADHD from Dr. Richard Madden with Presbyterian Medical Group - Belen beginning in 2000. [Tr. 238.] Plaintiff was initially treated with Ritalin, but his mother took him off of it because he was too sedated. [Id.] In February 2006, Dr. Madden prescribed Concerta for Plaintiff's ADHD, which Plaintiff tolerated and continued taking until May 2007. [Tr. 229, 238.] Plaintiff discontinued taking the Concerta on his own and reported to Dr. Madden that he was "doing okay without it." [Tr. 229.] Dr. Madden's medical records systematically repeat Plaintiff's problem list as "1. Partial seizures, secondary generalization, onset 2002; 2. ADHD; 3. Poor impulse control,

poor judgment." [Tr. 229-30, 234-38.] Dr. Madden's notes indicate that Plaintiff's ADHD is improved with medication. [Id.]

### C.   Dr. Douglas Barrett - Seizure Disorder

Plaintiff has been followed by Neurologist Dr. Douglas Barrett for his seizure disorder. [Tr. 239, 240, 246, 337.] The records contained in the Transcript of Administrative Record in this regard begin on February 1, 2006; however, Dr. Madden's records indicate that Plaintiff's seizures began in 2002. Dr. Barrett has consistently prescribed Depakote to control Plaintiff's seizures. [Id.] Although Plaintiff continues to experience seizures while on medication, Dr. Barrett's notes indicate that Plaintiff's breakthrough seizures are likely due to subtherapeutic levels of Depakote, such as when Plaintiff either forgets or stops taking his medication, combines his medication with alcohol consumption, or has experienced stomach-related illness that includes vomiting. [Id.]

### D.   Mental Status Examination - Dr. Finian J. Murphy

On May 16, 2008, Plaintiff was referred by Disability Determination Services to Dr. Finian J. Murphy, Ed. D., for a mental health status evaluation. [Tr. 288-291.] Dr. Murphy concluded that:

> [Plaintiff's] ADLS are within the normal range. He is oriented in all spheres and has average intelligence. His ability to understand instructions is limited. His ability to carry out instructions, to concentrate and to persist a[t] tasks is seriously limited by his psychological problems. The claimant has the ability to handle his own benefit payment.

[Tr. 288.]

Dr. Murphy diagnosed Plaintiff as follows:

      Axis I:      ADHD, PTSD in remission

      Axis II:     None

   Axis III:  Seizure Disorder

   Axis IV:  Psychosocial and Medical Problems

   Axis V:  GAF 35

**E.** **Mental Residual Functional Capacity Assessment - Dr. Scott Walker**

On May 19, 2008, Dr. Scott Walker completed a Mental Residual Functional Capacity Assessment. Based on the record only, Dr. Walker found that Plaintiff was *moderately limited* in his (1) ability to understand and remember detailed instructions; (2) ability to carry out detailed instructions; (3) ability to maintain attention and concentration for extended periods; (4) ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (5) ability to sustain an ordinary routine without special supervision; (6) ability to complete normal work-day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (7) ability to accept instructions and respond appropriately to criticism from supervisors; (8) ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; (9) ability to respond appropriately to changes in the work setting; (10) ability to be aware of normal hazards and take appropriate precautions; (11) ability to travel in unfamiliar places or use public transportation; and (12) ability to set realistic goals or make plans independently of others. [Tr. 311-12.]

Dr. Walker determined that Plaintiff had a "mild" degree of limitation in his activities of daily living; a "mild" degree of limitation in his social functioning; and a "moderate" degree of limitation in maintaining concentration, persistence, or pace. He concluded that:

> Claimant can understand, remember, and carry out simple instructions, make simple decisions, attend and concentrate for two hours at a time, interact adequately with co-

workers and supervisors, and respond appropriately to change in a routine work setting.

[Tr. 313.]

## DISCUSSION

### A.   Step Three Findings

Plaintiff first asserts that the ALJ erred by failing to consider whether Plaintiff meets the Listing of Impairments at § 12.04 - Affective Disorders. Plaintiff states that prior to the hearing in this case, Plaintiff asked the ALJ in writing to consider whether he meets the criteria of Listing § 12.04. [Motion at 6, Tr. 210.] The ALJ instead analyzed Plaintiff's mental impairment, specifically ADHD, under Listing § 12.02 - Organic Brain Disorders, which Plaintiff argues is not the most appropriate listing. Plaintiff contends the ALJ committed reversible error by failing to analyze Plaintiff's mental impairment under Listing § 12.04.

Defendant argues that to meet either Listing 12.02 or Listing 12.04, Plaintiff must meet the paragraph "B" criteria of these Listings, and the paragraph "B" criteria is exactly the same for both of these Listings [2] The ALJ evaluated the B Criteria under Listing 12.02 as follows:

> When his mental status is evaluated under section 12.02 of the regulations I find that in activities of daily living,[3] the claimant has "mild" restrictions. Mr. Griego

---

[2] The "B" criteria under each of these listings are as follows:

1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration [.]

[3] Activities of daily living include adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office. In the context of your overall situation, we assess the quality of these activities by their independence, appropriateness, effectiveness, and sustainability. We will determine the extent to which you are capable of initiating and participating in activities independent of supervision or direction. 20 C.F.R. Pt. 4040, subpt. P, App. 1, Mental Disorders, Assessment of Severity.

engages in a wide range of routine activities independently, appropriately, and effectively.

Mr. Griego has reported isolative behaviors, but there is no substantive indication that he is unable to interact appropriately with others when so inclined, and engages in recreational activities with a social component. In social functioning,[4] he has "mild" difficulties.

Mr. Griego has some attention deficits, but the evidence as a whole supports that they do not seriously interfere with his day-to-day functioning. He engages in a wide range of activities which are consistent with an ability to perform at least simple, repetitive tasks consistently and competitively. I therefore find "moderate" limitations in concentration, persistence, and pace,[5] with a specific vocational limitation to simple, repetitive tasks, such as those inherent in unskilled types of work.

As for episodes of decompensation, the claimant has experienced no episodes of decompensation.[6]

---

[4] Social functioning refers to your capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals. Social functioning includes the ability to get along with others, such as family members, friends, neighbors, grocery clerks, landlords, or bus drivers. You may demonstrate impaired social functioning by, for example, a history of altercations, evictions, firings, fear of strangers, avoidance of interpersonal relationships, or social isolation. You may exhibit strength in social functioning by such things as your ability to initiate social contacts with others, communicate clearly with others, or interact and actively participate in group activities. We also need to consider cooperative behaviors, consideration for others, awareness of others' feelings, and social maturity. Social functioning in work situations may involve interactions with the public, responding appropriately to persons in authority (e.g., supervisors), or cooperative behaviors involving coworkers. 20 C.F.R. Pt. 4040, subpt. P, App. 1, Mental Disorders, Assessment of Severity.

[5] Concentration, persistence or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings. Limitations in concentration, persistence, or pace are best observed in work settings, but may also be reflected by limitations in other settings. In addition, major limitations in this area can often be assessed through clinical examination or psychological testing. Wherever possible, however, a mental status examination or psychological test data should be supplemented by other available evidence. 20 C.F.R. Pt. 4040, subpt. P, App. 1, Mental Disorders, Assessment of Severity.

[6] Episodes of decompensation are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace. Episodes of decompensation may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two). Episodes of decompensation may be inferred from medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system (e.g., hospitalizations, placement in a halfway house, or a highly structured and directing household); or other relevant information in the record about the existence, severity, and duration of the episode.

The term repeated episodes of decompensation, each of extended duration in these listings means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks. If you have

The ALJ concluded that because claimant's "mental impairments do not cause at least two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation, each of extended duration," the paragraph B criteria are not satisfied. [Tr. 13.]  Because the ALJ found that Plaintiff did not meet his burden of proving he satisfied the paragraph "B" criteria of Listing 12.02, Defendant argues this necessarily results in Plaintiff not meeting his burden of proving he would satisfy the paragraph "B" criteria of Listing 12.04.  Defendant further contends that Plaintiff failed to present an argument that undermines the ALJ's findings regarding Plaintiff's restrictions under the "B" criteria and conversely only summarily stated that Plaintiff meets paragraphs B.2 and B.3. [Response at 4.]

The Listings describe impairments that are considered severe enough to prevent a person from performing any gainful activity.  20 C.F.R. §§ 404.1525(A), 416.925(A).  "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).  When a claimant for disability benefits presents evidence of a mental impairment, the Commissioners must follow the procedure for evaluating mental impairments set forth in 20 C.F.R. § 404.1520a and the Listings.  *Cruse v. United States Dept. of Health & Human Serv.*, 49 F.3d 616-17 (10th Cir. 1995).  This procedure involves two parts.  Under Part A, the Commissioner determines "whether certain medical findings which have been found especially relevant to the ability to work are present or absent." 20 C.F.R. § 404.1520a(b)(2).  Under Part B, the Commissioner "rate[s] the degree of functional

---

experienced more frequent episodes of shorter duration or less frequent episodes of longer duration, we must use judgment to determine if the duration and functional effects of the episodes are of equal severity and may be used to substitute for the listed finding in a determination of equivalence. 20 C.F.R. Pt. 4040, subpt. P, App. 1, Mental Disorders, Assessment of Severity.

loss resulting from the impairment(s)." *Id*. at § 404.1520a(c)(3). The Listings subsections applying to mental disorders enumerate criteria that guide the Commissioner through Parts A, B and C for a given disorder. 20 C.F.R. Pt. 404, Subpt. P, App. 12.02-12.08.

The ALJ determines at step three whether any medically severe impairment, alone or in combination with the other impairments, meets or is equivalent to a number of listed impairments that are so severe as to preclude substantial gainful activity. *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005). At step three Plaintiff has the "burden to present evidence establishing [his] impairments meet or equal listed impairments." *Fischer-Ross*, 431 F.3d at 733. To satisfy this burden, Plaintiff must show that his mental impairment "meet[s] all of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). The determination of whether Plaintiff's mental impairment meets or equals a listing must be based solely on medical evidence. *Bernal v. Bowen*, 851 F.2d 297, 300 (10th Cir. 1988).

At step three, an ALJ is required to identify the listing or listings that are relevant and application in a particular case. *See Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The ALJ is also required to discuss the evidence and his reasons for concluding that a claimant does not meet or equal a relevant and applicable listing. *Id.* Here, Plaintiff's counsel specifically asked the ALJ prior to the hearing to consider Plaintiff's mental impairment under Listing § 12.04 citing to Plaintiff's "appetite disturbance with change in weight, sleep disturbance, difficulty concentrating or thinking, easy distractibilty, and involvement in activities that have a high probability of painful consequences." [Tr. 210.] Listing § 12.04 differs from Listing § 12.02 because it contains diagnostic descriptions of depressive syndrome, manic syndrome, and bipolar syndrome as follows:

11

Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome, as evidenced by at least *one* of the following:

1. Depressive syndrome characterized by at least *four* of the following:

   a. Adhedonia or pervasive loss of interest in almost all activities; or
   b. Appetite disturbance with change in weight, or
   c. Sleep disturbance, or
   d. Psychomotor agitation or retardation or
   e. Decreased energy, or
   f. Feelings of guilt or worthlessness, or
   g. Difficulty concentrating or thinking, or
   h. Thoughts of suicide, or
   i. Hallucinations, delusions or paranoid thinking

2. Manic syndrome characterized by at least *three* of the following:

   a. Hyperactivity, or
   b. Pressures or speech, or
   c. Flight of ideas, or
   d. Inflated self-esteem, or
   e. Decreased need for sleep, or
   f. Easy distractibility, or
   g. Involvement in activities that have a high probability of painful consequences which are not recognized, or
   h. Hallucinations, delusions or paranoid thinking.

3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes).

Plaintiff claims that he has had weight loss, sleep disturbance, and difficulty concentrating thereby meeting three of the criteria under A1; and that he has hyperactivity, easy distractibility, and involvement in activities that have a high probability of painful consequences that are not recognized (i.e., he doesn't take his seizure medication because he doesn't think he needs it) thereby meeting three of the criteria under A2. [Motion at 7.] Plaintiff further claims that he meets two of the four categories under the "B" criteria of Listing 12.04, asserting that he

12

has marked difficulties in both maintaining social functioning and maintaining concentration, persistence, or pace. [Motion at 7.]

It is undisputed that the ALJ failed to make any reference to Listing § 12.04.  However, a step three error, such as the one in this case, does not automatically require remand.  Instead, the Court must consider whether "confirmed or unchallenged findings made elsewhere in the ALJ's decision confirm the step three determination under review."  *Fischer-Ross v. Barnhart*, 431 F.3d 792, 734 (10th Cir. 2005).  If such findings "conclusively preclude a claimant's qualification under the listings at step three" such that "no reasonable factfinder could conclude otherwise, "then any step three error is harmless.  *Id.* at 735.  If, however, there are no findings that "conclusively negate the possibility" that a claimant can meet a relevant listing, *see i.d*, we must remand to the ALJ for further findings.  *See Clifton*, 79 F.3d at 1009-10.

Here, the ALJ made no findings that conclusively negate the possibility that Plaintiff could meet the pertinent requirements of Listing 12.04 advocated by Plaintiff's counsel.  To the contrary, while the ALJ addressed Plaintiff's ADHD under Listing 12.02, the ALJ's analysis omits discussion of the following significant probative evidence relevant under Listing 12.04: (1) Plaintiff exercises poor impulse control and poor judgment, including decisions to stop taking his medication [Tr. 32, 229-39, 342-43]; (2) Plaintiff forgets to take his medications and requires reminders [Tr. 42, 131, 156]; (3) Plaintiff has a history of and is currently being treated for depression [Tr. 33, 42, 180, 288]; (4) Plaintiff has experienced weight loss in connection with depression [Tr. 23]; (5) Plaintiff has difficulty sleeping [Tr. 130, 140]; (6) Plaintiff requires "one step, specific" instructions, has a very short attention span, is easily distracted, and requires lists in order to complete tasks [Tr. 39, 44, 134, 144, 185, 187, 188, 191, 192, 202, 238]; and

(5) Dr. Finian J. Murphy diagnosed Plaintiff with a Global Assessment of Functioning of 35[7] [Tr. 288]. Furthermore, the Commissioner's argument that because the ALJ found that Plaintiff did not meet his burden of proving he satisfied the paragraph "B" criteria of Listing 12.02 necessarily results in Plaintiff not meeting his burden of proving he would satisfy the paragraph "B" criteria of Listing 12.04 falls short because the ALJ is required to discuss the evidence and his reasons for concluding that a claimant does not meet or equal a relevant and applicable listing. The ALJ's report is silent with respect to Listing § 12.04.

In light of the above error by the ALJ in his consideration of Plaintiff's mental impairment, the Court must remand for further findings.

### B. Remaining Claims of Error

The Court will not address Plaintiff's remaining claims of error. *Wilson v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand.").

### CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Reverse or Remand the Administrative Decision [Doc. No. 21] is GRANTED.

**ALAN C. TORGERSON**
**United States Magistrate Judge,**
**Presiding by Consent**

---

[7] The GAF is a subjective determination based on a scale of 1-100 of "the clinician's judgment of the individual's overall level of functioning." Diagnostic & Statistical Manual of Mental Disorders, 5th ed. (1994) ("DSM-IV"), p. 32. Individuals with a GAF of 40 experience a major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., avoids friends, neglects family, and is unable to work). *Id.*